565 P.2d 1352 (1977)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Donald LOWE, Defendant-Appellant.
No. 75-304.
Colorado Court of Appeals, Div. II.
May 19, 1977.
*1353 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., James S. Russell, Asst. Atty. Gen., Thomas Casey, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, Mary G. Allen, Deputy State Public Defender, Denver, for defendant-appellant.
SILVERSTEIN, Chief Judge.
The defendant, Donald Lowe, appeals the judgment of conviction on charges of rape, second-degree kidnapping, and menacing. We reverse.
The prosecutrix testified at trial that in January 1974, as she was walking to her home following a visit to a girl friend in the neighborhood, the defendant stopped his vehicle nearby and approached her with a pistol. According to the prosecutrix, the defendant ordered her into the vehicle, drove to a motel, and there forced her to submit to sexual intercourse.
The prosecutrix further stated that after this incident, defendant returned her to the area of the initial encounter and that she immediately went to her home and telephoned the girl friend, informing her of the occurrence. Over defendant's objection, the friend testified concerning her conversation with the prosecutrix.
By means of the license number on defendant's vehicle, police officers subsequently traced the automobile and prepared to impound it. When defendant appeared at the scene, he was arrested and taken to police headquarters where he gave oral and written statements regarding his activities during the evening.
In his defense, defendant testified that he had offered the prosecutrix a ride to her home. He admitted that he had been in the motel room, which he had previously rented, with the prosecutrix, but denied that he had forced her to accompany him or that any sexual intercourse had taken place. In response to the prosecutor's objection, the trial court ruled that defendant could not testify with respect to statements made to defendant by the prosecutrix during the course of the incident.
Defendant's assignments of error are primarily directed toward various rulings of the trial court as to evidentiary matters. We conclude that certain of those rulings constitute reversible error, and that defendant was deprived of a fair trial.

I
Defendant first contends that the trial court erred in refusing to permit him to testify concerning certain statements of the prosecutrix. Defendant's theory is that inasmuch as they were part of the res gestae, the statements were not excludible as hearsay, and, in addition, were offered as evidence of their effect on defendant's state of mind rather than to prove the truth of the facts asserted therein.
*1354 We agree that under either theory, the prosecutrix's statements were admissible into evidence. The utterances were made as "part of the transaction", Graves v. People, 18 Colo. 170, 32 P. 63 (1893), and thus constituted an aspect of the entire incident to be considered by the jury. Fitzpatrick v. People, 159 Colo. 485, 412 P.2d 893 (1966); see also City and County of Denver v. Gallegos, Colo., 560 P.2d 444. Further, the statements were pertinent to show the defendant's state of mind with respect to the prosecutrix's alleged consent, and therefore were not subject to the prohibition against hearsay. People v. Burress, 183 Colo. 146, 515 P.2d 460 (1973); People v. Green, Colo.App., 553 P.2d 839 (1976).
The People concede that the excluded testimony should have been admitted into evidence. However, relying on People v. Cushon, Colo., 539 P.2d 1246 (1975), the People maintain that, absent an offer of proof by defendant delineating the substance of the proposed testimony, defendant is precluded from raising the issue on review. Under the circumstances presented here, we disagree.
The record reveals that defendant repeatedly objected to the trial court's ruling, cf. People v. Cushon, supra, and, in view of the extended discussion of the matter by the respective counsel and the court, it is evident that the court was fully apprised of the nature of the proffered testimony. Consequently, where, as here, the relevancy, materiality and substance of proposed evidence is demonstrated to the trial court, a formal offer of proof is not necessary to preserve the alleged error. United States v. Alden, 476 F.2d 378 (7th Cir. 1973).
Nor do we deem the error here to be harmless. The element of consent was crucial to the theory of the defense. Denial of an adequate opportunity to testify as to the events substantiating his belief in the prosecutrix's consent resulted in significant prejudice to the defendant. See People v. Flores, Colo., 539 P.2d 1236 (1975); People v. Green, supra.

II
The defendant next asserts that the trial court erred in admitting into evidence the testimony of the girl friend, a detective, and a doctor, each of whom recounted certain details concerning the alleged rape as related to them by the prosecutrix. The People respond that the testimony was admissible under the res gestae exception to the hearsay rule or for the purpose of rehabilitating an impeached witness, that defendant failed to preserve the assigned errors with respect to the detective and the doctor, and that the specified errors were in any event harmless.
Testimony showing that an alleged rape victim complained of the offense is admissible for the purpose of corroborating the victim's testimony, but not as independent evidence of the offense charged. Padilla v. People, 156 Colo. 186, 397 P.2d 741 (1964). Further, only the fact of the complaint is admissible; the details of the occurrence must be excluded. People v. Montague, 181 Colo. 143, 508 P.2d 388 (1973). Allowing testimony which describes particulars of the crime may be deemed so prejudicial as to necessitate reversal of conviction for rape. People v. Montague, supra.
Here, the friend stated that she could not recall what the prosecutrix had related during the telephone conversation and that in fact her testimony was based on subsequent discussions with the prosecutrix. Consequently, her testimony did not involve a recitation of the "instinctive words and acts" of the prosecutrix, thereby assuring the trustworthiness of the testimony. See Graves v. People, supra. The theory of res gestae therefore has no application with respect to her testimony. In conjunction with the exclusion of defendant's proposed testimony regarding the prosecutrix's statements, admission of the testimony describing the prosecutrix's version of the incident and her emotional distress was reversible error.
The foregoing is dispositive of the issues relative to the testimony of the detective and the doctor. The principles set forth *1355 above provide adequate standards for treatment of the matter on retrial.

III
The prosecutrix had testified to having had intercourse three days before the alleged rape with a man other than defendant. In order to impeach this testimony, defendant had this man testify. Defendant contends that the conduct of the prosecutors toward this witness was prejudicial. We agree.
The witness stated, contrary to the prosecutrix's testimony, that he had not in the recent past had sexual intercourse with the prosecutrix. The prosecuting attorneys sought to impeach his testimony by reference to an allegedly inconsistent prior statement made by the witness. In answer to the prosecution's inquiry, the witness replied that he did not recall making any earlier statement which contradicted his testimony.
Following this cross-examination, defense counsel asked him on redirect examination if he was aware of having taken an oath and if he had told the truth, to which questions the witness replied affirmatively. On recross-examination, the prosecutor asked the witness once again if he was unable to recall his prior inconsistent statement. When he repeated that he did not remember making the statement, the prosecutor requested the court to advise the witness of the penalty for perjury. The court did so. The prosecutor again asked him if he denied the earlier statement, prefacing the question as follows: "Now, Mr. ___, knowing the penalty for perjury in this state, do you still say . . .?"
After the witness's answer and excusal from the stand, but before he had left the courtroom, the prosecutor asked the court for the witness' address. The judge replied that the address was already available to the prosecutor, whereupon the prosecutor stated, "Your Honor, could you please ask the witness to give us his address?" The witness complied, at which point the prosecutor then requested the witness be directed to furnish his telephone number as well. The entire colloquy took place in the presence of the jury.
The People argue that the prosecutor's questioning was excused by the fact that defense counsel raised the matter of the oath, or, alternatively, that any prejudice was cured by the general instruction that arguments of counsel are not to be considered as evidence. We perceive neither justification for such conduct nor sufficient alleviation of its effect.
The prosecutor's remarks were not made in response to improper arguments of defense counsel, see Kurtz v. People, 177 Colo. 306, 494 P.2d 97 (1972); and, in light of the extended duration of the incident, the impact of the misconduct could not be attenuated by a general instruction given at the close of the case. The palpable import of the prosecutor's comments was that he believed the witness had committed perjury. Such manifestations of personal belief in the credibility of a witness by a prosecutor have been condemned in this state, People v. Wright, 182 Colo. 87, 511 P.2d 460 (1973), and we disapprove of them here.
We also disapprove of the prosecutor's questionable tactics in cross-examining the defendant as to the sequence in which he placed his witnesses on the stand.

IV
Asserting that his oral and written statements made to police officers following his arrest were involuntary, defendant contends that the trial court erred in admitting those statements into evidence. The People argue that, having failed to object to the police officer's testimony as to defendant's oral statements and having failed to present the issue in his motion for a new trial, defendant cannot now raise the question. In addition, the People argue that defendant's written statement, even assuming the trial court was correct in finding it to have been made involuntarily, was admissible into evidence for the limited purpose of impeaching defendant.
Since the record is devoid of any finding by the trial court as to whether the *1356 oral statements were made voluntarily, and the court was afforded no opportunity to correct the alleged error, we cannot now consider whether the oral statements were erroneously admitted into evidence. See People v. Eades, 187 Colo. 74, 528 P.2d 382 (1974).
The written statement was elicited after defendant was arrested and taken into custody, and was given his Miranda warnings. In the resulting written statement, defendant made no mention of his encounter with the prosecutrix. Defendant later offered as his rationale for this omission his concern that his girl friend would be angered to learn of any involvement by defendant with another woman.
Following an in camera hearing, the court ruled that under the circumstances, the statement was not voluntary even though defendant had been advised of his rights. However, the trial court later permitted the People to use the statement to impeach defendant's testimony at trial, basing this ruling on Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). This was error.
The court's finding of voluntariness is necessarily of a factual nature, see Rogers v. People, 104 Colo. 594, 94 P.2d 453 (1939), and being supported by the evidence, is binding on appeal. This finding of involuntariness rendered the written statement inadmissible for any purpose in this criminal proceeding. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). This rule was not changed by Harris, which dealt only with statements elicited from a nonadvised defendant, and which were otherwise voluntary and admissible. See Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Voluntariness remains the principal focus in determining admissibility under these circumstances. Lego v. Twomey, supra. In view of the court's finding that the written statement was involuntary, error was committed when the prosecution was permitted to use this statement for impeachment.
Since the written statement was inadmissible for any purpose due to its involuntary origin, we do not reach the issue raised as to whether a statement which excludes reference to the relevant incident represents a prior inconsistent statement suitable for impeachment. Cf. Hines v. People, 179 Colo. 4, 497 P.2d 1258 (1972). See also Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
We have considered defendant's remaining assignments of error and conclude that they are moot. The errors delineated above necessitate reversal.
Judgment reversed, and cause remanded for a new trial.
PIERCE, J., concurs.
VanCISE, J., concurs in the result.
VanCISE, Judge, concurring in the result:
I concur in the reversal of the judgment and the remand for a new trial for the reasons set forth in points I, II, and III of the majority opinion.
I disagree with the determination of the majority that the trial court erred in permitting the defendant's written statement to be used for impeachment purposes. Because defendant had not been informed of the nature of the charges against him, and had been told that if he wrote an account of his activities during the day in question he would be released, the court found the statement was not voluntary and barred its use in the prosecution's case in chief, even though defendant had been given his Miranda warnings. However, as stated in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1:
"`It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide *1357 himself with a shield against contradiction of his untruths.'
. . . . . .
"Having voluntarily taken the stand, [defendant] was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truthtesting devices of the adversary process."
See also Jorgenson v. People, 174 Colo. 144, 482 P.2d 962.
Assuming, but not deciding, that the statement is inconsistent with defendant's direct testimony, I find no error in allowing its use for the limited purpose of impeachment.