566 P.2d 706 (1977)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Park Journee ESTEP, Defendant-Appellant.
No. 75-723.
Colorado Court of Appeals, Div. III.
March 17, 1977.
Rehearing Denied March 31, 1977.
Certiorari Granted June 6, 1977.
*708 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., James S. Russell, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Thomson, Wylde & Nordby, Jack S. Nordby, Douglas W. Thomson, St. Paul, Minn., Richard L. Tegtmeier, Colorado Springs, for defendant-appellant.
BERMAN, Judge.
The defendant appeals his conviction of first degree murder, first degree arson, first degree assault, and aggravated robbery. We reverse.
On September 19, 1974, a man came to a massage parlor where two Korean women were working, Miss Lee and Miss Cousin. He left after several minutes, returning some half-hour later. He then produced a gun and took both women to a room where he had Cousin bind Miss Lee's hands. Thereafter he took Cousin to another room. Miss Cousin was later found dead, an autopsy revealing that she had died from a contact gunshot wound to the head. There were abrasions on her face, and first, second, and third degree burns on approximately one-half of her body, including the genital area. Miss Lee was also attacked that night, but she survived. She was stabbed in the neck, back, and chest, and the man apparently attempted to set her on fire.
The defendant was subsequently arrested based upon Miss Lee's pretrial identification and the identification of the defendant's truck by two other witnesses who said they saw the vehicle outside the massage parlor at the time the crimes were committed.

I.
Miss Lee described her assailant before and at trial as a clean-shaven man. The defendant, in his case in chief, produced several witnesses who testified that he wore a mustache on the date of the criminal episode.
Thereafter, the defendant called as a witness the Reverend Yoon Goon Kim, pastor of the First Presbyterian Church for Asian Committee in Colorado Springs. Kim is a Korean by birth who lived in his native land 40 years before coming to this country in 1972. He was educated in both Korea and the United States and was familiar with Korean culture. Kim was asked as to whether facial hair had any significance in Korean culture. The prosecution objected on the ground that Kim was not qualified as an expert and on the basis of relevancy. The trial court sustained the objection, ruling in effect that the line of inquiry was irrelevant.
In the subsequent offer of proof, the defendant offered Kim's opinion as a native Korean that facial hair is culturally significant as a mark of dignity, age, and respect in Korea, that it was a "folkway" in Korea, and that Miss Lee, as a Korean, would have paid particular attention to a mustache had one been worn by her assailant.
It should be noted that Miss Lee arrived in this country from Korea less than four months before the incident.
"Any evidence which is helpful in getting at the truth of a material issue is relevant, even though it is only a link in the chain of facts which must be proved to *709 make the proposition at issue appear more or less probable." 1 C. Torcia, Wharton's Criminal Evidence § 151 (13th ed. 1972); see also Federal Rules of Evidence, Rule 401. The proffered testimony was clearly relevant as tending to show that Miss Lee was accurate in her assertion that her assailant did not have a mustache, which, in turn, would have made the defendant's guilt appreciably less probable. The testimony was particularly important since it was obviously for the purpose of impeaching the identification of the defendant by the prosecution's key witness. Absent Miss Lee's eyewitness identification, the defendant could not have been convicted.
We further note that Kim's testimony would have been proper as an expert opinion. Kim was clearly qualified since "[a]n expert is one who has superior knowledge of a subject and is, therefore, able to afford the tribunal having the matter under consideration a special assistance, and his knowledge may have been acquired by professional, scientific or technical training or by practical experience in some field of human activity, conferring on him an especial knowledge not shared by men in general." Stone v. People, 157 Colo. 178, 401 P.2d 837 (1965) (emphasis added); see also Federal Rules of Evidence, Rule 702. Based upon his knowledge and experience, the witness had a specialized knowledge, not possessed by men generally and certainly not the jury.
This was a case that depended almost entirely on whether the jury believed that Miss Lee was correct in her identification of the defendant. As such, he was entitled to have the jury know the information Kim could have provided, and the exclusion of the testimony was reversible error.See People v. Schuemann, Colo., 548 P.2d 911 (1976); People v. Green, Colo.App., 553 P.2d 839 (1976).

II.
Miss Lee had described her assailant as sloppily dressed at the time she was attacked. The defendant put on numerous witnesses who indicated that he normally was neat and clean. During cross-examination of one such witness, the district attorney asked, "You never were with him when he was in the process of killing somebody, were you?" Defendant immediately objected and moved for a mistrial, accusing the district attorney of expressing his personal opinion of defendant's guilt. The trial court held an in camera hearing, chastised the district attorney, denied the motion for a mistrial, but sustained the objection. The court then admonished the audience not to "oh and ah" when they did not like what either side said "like was heard after the D.A. asked the [improper] question before the jury." When trial reconvened, the court informed the jury the question had been stricken and instructed the jury to disregard it.
The question was manifestly improper. First, it amounted to the prosecutor's assertion of his personal belief in the defendant's guilt, a practice universally condemned. See People v. Wright, 182 Colo. 87, 511 P.2d 460 (1973); ABA, Standards Relating to the Prosecution Function § 5.8.
Secondly, the prosecutor's question implies that the defendant killed other persons on other occasions. "The general rule is, that evidence is not admissible which shows, or tends to show, that the accused has committed a crime wholly independent of the offense for which he is on trial. The reason for the rule is, that no person shall be convicted of an offense by proving that he is guilty of another. Evidence of such character creates a prejudice against the accused, and the rule should, therefore, be strictly enforced in all cases where applicable." Warford v. People, 43 Colo. 107, 96 P. 556 (1908). (emphasis added)
For the reasons given above, we condemn the prosecutor's question; however, since the case must be retried for other reasons, we need not decide whether asking the question mandated a mistrial.

*710 III.
Since a new trial is required, certain evidentiary matters raised by defendant need to be discussed.
Relying on Archina v. People, 135 Colo. 8, 307 P.2d 1083 (1957), the defendant asserts that three photographs of the decedent should not have been admitted because their inflammatory nature outweighed any probative value. In Archina, the objectionable pictures showed the decedent nude, on a marble slab at the morgue after an autopsy had been performed, almost three weeks after the crime had been committed. The court held those pictures inadmissible stating that they had no probative value and they served only to incite the jurors' passions.
The photos here lack the objectionable quality of those in Archina and were relevant; hence they were properly admitted. As stated in People v. Jones, 184 Colo. 96, 518 P.2d 819 (1974):
"It is well-established that photographs may be used to graphically portray, among other things, the scene of a crime, the identification of a victim, the appearance and condition of the deceased, and the location, nature and extent of the wounds or injuries, all of which matters are relevant. It has been consistently held that photographs are competent evidence of any relevant matter which it is competent for a witness to describe in words. Hampton v. People, 171 Colo. 153, 465 P.2d 394; Monge v. People, 158 Colo. 224, 406 P.2d 674; People v. Spinuzzi, 149 Colo. 391, 369 P.2d 427. That shocking details of the crime may be revealed by photographs does not render them inadmissible if otherwise relevant. . . ."
In the instant case, the photos show the victim and the room as found, thus rendering them relevant and admissible. Further, the photos are illustrative of testimony given at trial, see Hampton v. People, 171 Colo. 153, 465 P.2d 394 (1970). Accordingly, they were properly admitted in evidence.
The defendant next asserts that the exhibition to the jury of numerous knives, which were not received in evidence, was error. The trial court, on defendant's motion, refused admission of the knives in evidence. At that time the knives should have been removed from the view of the jury. However, the jury was instructed that, "[e]vidence offered at the trial and rejected by the court, and evidence stricken from the record by order of the court, should not be considered by you." We therefore must presume that the jury adhered to this instruction and did not consider the knives as evidence. People v. Knapp, 180 Colo. 280, 505 P.2d 7 (1973).
Judgment is reversed and the cause is remanded for a new trial consonant with the views expressed herein.
SILVERSTEIN, C. J., and RULAND, J., concur.