### No. C-1225

### The People of the State of Colorado v. Park Journee Estep

(583 P.2d 927)

Decided October 10, 1978. Rehearing denied November 6, 1978.

J. D. MacFarlane, Attorney General, David A. Robbins, Deputy, Edward G. Donovan, Solicitor General, James S. Russell, Assistant, for petitioner.

Thompson, Nordby & Peterson, Richard L. Tegtmeier, Jack S. Nordby, for respondent.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Respondent, Park Journee Estep, was convicted by a jury of first-degree murder, first-degree assault, first-degree arson, and aggravated robbery. The events giving rise to these charges occurred at the Suezy Massage Parlor in Colorado Springs on September 19, 1974. One woman was murdered by being shot, stabbed, and set on fire, and another woman, Miss Young Ja Lee, was stabbed in the back and had her neck slashed. The court of appeals reversed the convictions. *People v. Estep,* 39 Colo. App. 132, 566 P.2d 706. We do not agree that the alleged errors relied on by the court of appeals for reversal were so prejudicial as to require a new trial. Nor do we find the combined effect of the alleged errors denied the defendant a fair trial. *See People v. Reynolds,* 194 Colo. 543, 575 P.2d 1286; *Oaks v. People,* 150 Colo. 64, 371 P.2d 443. We therefore reverse the judgment of the court of appeals.

The court of appeals held that reversible error occurred when the district attorney propounded a highly improper question of a defense witness on cross-examination. The court of appeals further held that the trial court committed reversible error in refusing to admit testimony offered by the defense concerning the cultural significance of facial hair to Koreans. The key witness against the defendant was a Korean national and the testimony was in dispute as to whether the defendant wore a moustache at the time of the crimes. It is also contended here, although not addressed by the court of appeals in its opinion, that prejudicial error occurred during trial when the district attorney impermissibly suggested to the sole

eyewitness to the transaction that the defendant was the perpetrator of the crimes.

■ In evaluating the quality of a trial for essential fairness, we recognize that, although an accused is entitled to a fair trial, he is not necessarily entitled to a perfect trial. If the latter were the standard for review, a conviction seldom would be upheld on appeal. This is not to say, however, that courts and prosecutors should not continually strive toward the achievement of the goal of perfect justice.

I.

■ At the outset, in reviewing the sufficiency of the evidence, we apply the standard for review set forth in *People v. Bennett,* 183 Colo. 125, 515 P.2d 466: "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." The occurrence of the crimes was not in dispute. The critical issue was whether the defendant was the perpetrator. We hold that the prosecution met its burden of proving a prima facie case against the defendant.

The defendant elected not to testify in his own behalf. The jury was properly instructed on the law governing the case and, as the judge of the credibilty of the witnesses and of the weight to be accorded to the evidence, it chose to believe the prosecution's witnesses.

There was substantial evidence directly connecting the defendant with the scene of the crime. First, and most importantly, the sole survivor of the criminal transaction, Miss Young Ja Lee, identified the defendant from a photographic array, again at a physical lineup, and eventually in court during the trial. Second, two young soldiers identified a truck substantially similar to defendant's truck which they had observed at the crime scene at approximately the time that the crimes were occurring. Miss Lee also described having seen a truck similar to the defendant's truck just prior to the commission of the crimes.

The district attorney also introduced circumstantial evidence tending to show that the defendant could have committed the crimes. It was demonstrated that the defendant owned a .38-caliber pistol and several knives which might have been used in the murder and assault. It was also undisputed that the defendant's wife had recently purchased the Speer brand of shot-shell similar to that which was used in the gun involved in the murder. There was testimony that the defendant, along with 36% of the male population, has blood group Type A, Rh-positive, and is a "secreter." A sperm sample obtained from the body of the decedent was shown to have come from such a "secreter."

Other evidence introduced by the prosecution indirectly tended to support the prosecution's case. There was evidence that the defendant had

occasionally visited massage parlors. It was shown that the defendant did not like the Vietnamese people. The victims here were Korean. Finally, there was evidence that the defendant's family was having difficulty in meeting its current bills, thus supplying a possible motive for the crimes.

As noted before, the critical evidence concerned identification of the criminal actor. The defense introduced evidence casting some doubt upon Miss Lee's identification of the defendant and upon the identification of the defendant's truck. The prosecution was unable to further link the defendant to the crimes by either fingerprints, ballistics tests, license plates, incriminating statements, or any other real evidence. The testimony of the defendant's financial problems was answered by testimony indicating that the defendant and his family were actually in fairly good financial shape, from an equity standpoint.

## II.

■ The defendant presented a series of witnesses who had seen the defendant on a daily basis during September and October 1974 and who recalled that he always had a moustache and a neat appearance. In beginning his cross-examination of one of these witnesses, the prosecutor asked the following question: "You never were with him when he was in the process of killing somebody, were you?" Defense counsel immediately asked for a mistrial, and in the alternative requested that the question be struck from the record. The trial court denied the motion for a mistrial, but instructed the jury to disregard the question. The district attorney then apologized to the witness for the improper question.

We agree with the court of appeals that this question was "manifestly improper." There was no valid purpose for asking such a highly prejudicial question.

As the court of appeals noted, the question is objectionable for manifesting the prosecutor's personal belief that the defendant is guilty. It has been appropriately pointed out that: "Such expressions by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of his office and undermine the objective detachment which should separate a lawyer from the cause for which he argues." *ABA, Standards Relating to the Prosecution Function* § 5.8(b) (commentary). This practice has been strongly disapproved in Colorado. *E.g., People v. Wright,* 182 Colo. 87, 511 P.2d 460; *People v. Lowe,* 39 Colo. App. 312, 565 P.2d 1352.

We do not believe, however, in the circumstances of this case and in the absence of other prejudicial error, that the effect, if any, of the ill-framed question was of sufficient magnitude to require a new trial, presuming as we do that the jury followed the instruction of the court to disregard the improper question.

## III.

 A second alleged error at trial concerning the identification issue was the one upon which the court of appeals based its reversal. The defense tried to introduce testimony by the Reverend Yoon Goon Kim, and made the following offer of proof:

"MR. THOMPSON: The defendant would offer to prove, by the witness, Pastor Kim, that if Pastor Kim is allowed to testify, he will testify he is a native Korean, lived in Korea a considerable number of years; is familiar with the Korean culture; that, further, he will testify that facial hair in Korea is culturally significant to the extent that it is a mark of dignity; it is also a mark of age and is worn by people for respect; that it has significance that mustaches and beards are usually worn by the aged, by the cultured, and the professional; younger people do not have the temerity to wear facial hair, because it is a mark of respect and dignity.

"He would further state that this is a mores, or folkway of Korea; that it has significance to any Korean, who would probably pay particular attention or greater heed to facial hair than, say an American, because of this particular significance.

"The so-called victim in this case, who identified Park Estep as the assailant, is Korean, lived in Korea all her life, would be a part of this very culture, would have been exposed to this folkway, and facial hair would have a particular significance to her, as contrasted to some other witness; and, therefore — The evidence shows that on September 19th, 1974, Park Estep had a mustache. The witness Lee testified that her assailant did not have a mustache. And we feel that this is a very crucial idicia of identification, and we feel that, because Miss Lee is Korean, she would have paid particular attention to a mustache, as contrasted to someone else, and, therefore, we think it's extremely crucial, it's extremely material, and extremely relevant to one of the very issues of identification in this case; and if Pastor Kim were allowed to testify, that would be the essence of his testimony."

The trial court excluded this evidence as irrelevant because it was "pure speculation" as to what Miss Lee should or should not have noticed by reason of her cultural background. We agree that the ruling of the trial court was correct in excluding this evidence in the context in which it was offered. A proper foundation was not laid preparatory to the offer of the evidence. Although Miss Lee was a native of Korea and had been in the United States only four months prior to the commission of the crimes, it was not shown that she, as a Korean, was aware of the conspicuousness of the moustache and its cultural connotation. Absent a showing of her knowledge of this Korean "folkway" or that she should have been aware of it by reason of her education and living experience in Korea generally, we fail to see how this aspect of the Korean culture could be relevant to her ability to more accurately observe her assailant, and thus lend more

credibility to her description of him as a man without a moustache. In the circumstances, the proffered opinion evidence from Reverend Kim was speculative, as found by the trial court. We thus disagree with the court of appeals that the evidence should not have been excluded on relevancy grounds under the circumstances.

It is apparent that, although Miss Lee testified and was cross-examined at great length, defense counsel at no time inquired into this area, although he could have, if such were the fact, laid the necessary foundation to show her knowledge and awareness of the Korean custom. Had such a foundation been established, then we agree that the evidence would have been relevant as "tending to show that Miss Lee was accurate in her assertion that her assailant did not have a moustache, which, in turn, would have made the defendant's guilt appreciably less probable." *People v. Estep,* 39 Colo. App. 132, 566 P.2d 706.

In sum, we hold that the trial court did not abuse its discretion in not permitting the introduction of the evidence on relevancy grounds.

## IV.

■ Respondent contends that, during trial, error occurred in regard to the identification which unduly prejudiced the defendant. He argues that the prosecutor improperly assisted Miss Lee, the sole identification witness, when she hesitated in making an in-court identification. The identification of the defendant by Miss Lee was a crucial link directly connecting the defendant with the crimes. In view of the closeness of the evidence, the prosecution's case turned upon the reliability of this identification.

It is undisputed that Miss Lee had been able to closely view the perpetrator of the crimes during an earlier visit he made to the Suezy Massage Parlor on the evening of the crimes. Miss Lee observed him from close range for three to five minutes in the well-lit living room of the Parlor. When he returned twenty or thirty minutes later, she again had an opportunity to observe him.

Miss Lee initially gave police a description of her assailant which resembled the defendant. Subsequently, she was shown a series of approximately sixty photographs at different times and did not identify anyone until she was shown the defendant's picture. She immediately chose the defendant and commented that he had not had his moustache at the time of the crimes. A few days later, she again picked out the defendant at a lineup. On appeal, the defendant does not challenge the reliability of these identification procedures. When Miss Lee eventually made an in-court identification of the defendant, she reiterated that the defendant had not had a moustache the night of the crimes.

The defendant offered the testimony of nine witnesses — neighbors, soldiers with whom the defendant worked, and commanding officers — who saw him on a daily basis during September and October 1974 and never saw him without his fairly prominent moustache. In addition, an

army field recruiter remembered that the defendant brought his wife in for testing at 7:45 on the morning after the crimes and the recruiter specifically recalled seeing the defendant's moustache. Moreover, another neighbor saw the defendant at 3:45 p.m. on the day after the crimes and also observed his moustache.

When the district attorney attempted to have Miss Lee, who had been sequestered throughout the trial, make an in-court identification of the defendant, the following colloquy took place:

"Q. (By Mr. Tabor) Miss Lee, do you see this man that did this to you in the courtroom?

"A. Can I stand up and look around?

"Q. Yes, you may.

(Long pause.)

"A. I can't see from here.

"Q. Fine. Miss Lee, would you walk up — Would you walk up to this man —

"MR. THOMPSON: Just a minute. Just a minute.

"MR. TEGTMEIER: Wait.

"MR. THOMPSON: I want to move for a mistrial. That's the most leading and suggestive act I have seen in the courtroom.

"THE COURT: The jury may be excused at this time. If they would go with the Bailiffs."

The record shows that after Miss Lee said "I can't see from here," the prosecutor walked behind the prosecution's table and the lectern, toward the defense table. When approximately behind defense counsel Thompson, he began to raise his arm toward defendant, stating "Would you walk up to this man." The record clearly supports the court's conclusion that the district attorney's request — "Would you walk up to this man" — was not translated to Miss Lee.

In denying the defense motion for a mistrial, the court stated:

"I have already stated on the record, before we recessed, as I observed Mr. Tabor [the district attorney], he did not reach the defendant. He was starting to lift his arm, and at that time Mr. Thompson made his statement, 'Just a minute.'

"I am going to deny the motion for the mistrial.

"The witness, of course, is emotionally upset, and she was certainly taking her time looking over the body of the courtroom, and she never answered the question of Mr. Tabor, the District Attorney, as to whether she could identify the man in question as being in the courtroom."

The trial then resumed. Miss Lee left the witness stand, walked through the courtroom, returned to the stand, and then identified the defendant as her assailant.

We do not find that the conduct of the district attorney was reversible error. What the district attorney was attempting to do is essentially

similar to requiring a defendant to stand, or to put on a garment, or to expose a tattoo on his body, as an aid to his identification. An accused cannot be tried in a vacuum. He must be present and be exposed to an identifying witness. The witness must be allowed to know who is the accused, even if it requires directing attention to him in the courtroom. *LaBlanc v. People,* 161 Colo. 274, 421 P.2d 474; *Vigil v. People,* 134 Colo. 126, 300 P.2d 545; *People v. Shackelford,* 37 Colo. App. 317, 546 P.2d 964.

We do not agree with respondent that he was denied due process of law by reason of the manner in which the in-court identification was handled by the district attorney.

## V.

■ We agree with the court of appeals' disposition of the issues of the admissibility of the photographs and the exhibition of the knives which were not admitted into evidence. We also find no error in the trial court's restriction of the cross-examination of certain prosecution witnesses.

We observe that defendant was well-represented by very able counsel and was afforded an excellent presentation of his defense. The conduct of the trial was well-controlled by the presiding judge, and we find no reason requiring that the verdicts of the jury be overturned.

The judgment of the court of appeals is reversed and the case returned to the court of appeals with instructions to remand the cause to the district court with directions to reinstate the guilty verdicts.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE GROVES does not participate.