The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Robert SANDOVAL–CANDELARIA,
Defendant–Appellant.

No. 07CA0759.

Colorado Court of Appeals,
Div. I.

May 26, 2011.

As Modified on Denial of Rehearing
Sept. 1, 2011.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Robert Sandoval–Candelaria, appeals the judgment of conviction entered on a jury verdict finding him guilty of manslaughter. He also appeals his sentence. We affirm the judgment of conviction, vacate the sentence, and remand for resentencing.

## I.  Background

This case stems from the death of S.H., who was killed by a shotgun wound to the head at the home where she lived with Sandoval and their daughter. The parties dispute the relevant facts leading up to her death.

On the morning of her death, S.H. arranged for her mother to purchase a small quantity of methamphetamine for Sandoval. The People assert that sometime after the mother delivered the drugs, S.H. and Sandoval had several heated arguments, and that Sandoval ultimately went into his bedroom to retrieve a shotgun and shot S.H. in the head at point blank range. The theory of defense was that Sandoval's half-sister, Shante Lo-

pez, shot S.H., and then confessed the crime to her friends Patrick Craine, Amber Trujillo and Daniel Gomez. At trial, Lopez testified that at the time of the shooting, she was at a house on South Hooker Street in Denver.

The People charged Sandoval with one count of first degree murder—after deliberation, for the shooting of S. H., and a jury convicted Sandoval of the lesser included offense of manslaughter. Subsequently, the trial court delayed the sentencing hearing from August 28, 2006 until March 6, 2007, when it sentenced Sandoval to twelve years in prison.

This appeal followed.

## II. Residual Hearsay Exception

Sandoval contends that the trial court abused its discretion when it excluded as evidence a witness's transcribed police interview and thereby violated Sandoval's right to present a defense. We disagree.

### A. Standard of Review

■■■ Exclusion of evidence is reviewed for an abuse of discretion. *Golob v. People*, 180 P.3d 1006, 1011 (Colo.2008). The right to present a defense is violated "only where the defendant was denied virtually his only means of effectively testing significant prosecution evidence." *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo.2009). Accordingly, where a defendant's right to present a defense is not implicated, reversal is required only if the error substantially influenced the verdict or affected the fairness of the proceedings. *Id.* at 1073.

### B. Analysis

Prior to trial, Sandoval offered as evidence a transcript of a police interview with C.L., an unavailable witness, under the residual exception to hearsay. Sandoval sought to impeach Lopez's prior statements that she was at a party with C.L. at the time of the murder.

The trial court found that the evidence lacked sufficient circumstantial guarantees of trustworthiness, commenting, "I can't imagine a statement that has [fewer] guarantees of trustworthiness.... [I]f this came under

the residual hearsay exception ... every statement would come in under that exception and that would swallow the rule."

■■■ Hearsay is inadmissible unless an exception or exclusion applies. *People v. Carlson*, 72 P.3d 411, 420 (Colo.App.2003). Under the residual exception to the hearsay rule, the proponent must establish by a preponderance of the evidence that the statement is supported by "circumstantial guarantees of trustworthiness." CRE 807; *see Vasquez v. People*, 173 P.3d 1099, 1106 (Colo.2007). In considering the trustworthiness of a statement, courts should examine the nature and character of the statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which the statement was made. *People v. Jensen*, 55 P.3d 135, 139 (Colo.App.2001) (citing *People v. Fuller*, 788 P.2d 741, 744 (Colo.1990)).

The defense's theory was that Lopez killed S.H., but at trial, Lopez testified that she was at a house on South Hooker Street at the time of the shooting. The defense sought to introduce the testimony of C.L., who was at the house on South Hooker Street during that night, and claimed that Lopez was not at the house at the time of the shooting.

Here, C.L.'s interview with the police officer was voluntary, not under oath, and began at approximately 1:22 a.m. Sandoval asserts that C.L. lacked bias or motive to lie about Lopez, because C.L. was not a suspect in the case and had a limited connection to Lopez. However, C.L.'s statement indicates his confusion regarding the timing of the shooting.

First, C.L. admitted that he was drunk during the day before the shooting. When the interviewing police officer asked C.L. to explain what happened, C.L. initially could not recall the day in question. Despite prompting from the officer, C.L. said, "No, I don't remember.... I don't remember what day it was, what exact day, I don't remember." The police officer asked, "Was it Monday, Tuesday, Thursday, Friday?" and C.L. replied, "I don't remember what day it was. I think it was, like, Monday or...."

Sandoval argues that despite C.L.'s initial confusion, he ultimately remembered that he was at the house on South Hooker Street on Sunday and Monday. However, the trial court's finding that his testimony lacked trustworthiness is not necessarily inconsistent with Sandoval's contention that C.L. was later able to confirm the particular dates in question. The fact that C.L. was confused and unclear regarding basic facts and dates for much of the interview with the police officer is sufficient to support the trial court's finding that his testimony lacked sufficient circumstantial guarantees of trustworthiness.

C.L. also could not accurately account for Lopez's presence on the night of the shooting. C.L. initially stated that Lopez arrived at the house on South Hooker Street on the night of the shooting, but did not spend the night, and then came back in the morning. When asked, "Did [Lopez] come back on Monday afternoon?" C.L. replied, "Yes ... I didn't see her then." C.L. later added that Lopez was in the house Monday evening, but "[he] didn't see her there."

Because C.L. could not clearly recall the basic and crucial fact of the date and time Lopez was at the house on South Hooker Street, the trial court did not abuse its discretion when it concluded that C.L.'s testimony lacked sufficient circumstantial guarantees of trustworthiness, and refused to admit C.L.'s police interview transcript under the residual exception to the hearsay rule.

## III. CRE 404(b)

Sandoval contends that the trial court abused its discretion when it admitted evidence of his prior drug dealing, because such evidence is inadmissible under CRE 404(b). We disagree.

### A. Standard of Review

We review a trial court's ruling on an evidentiary issue for an abuse of discretion. *People v. Stewart*, 55 P.3d 107, 122 (Colo.2002). A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.* (citing *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993)). The trial court has considerable discretion to determine the relevancy, admissibility, probative value, and prejudicial impact of evidence. *Ibarra*, 849 P.2d at 38.

Where a defendant fails to object to the admission of evidence at trial, we review for plain error. *People v. Miller*, 113 P.3d 743, 745 (Colo.2005). Plain error is grave error that seriously affects the substantial rights of the accused. *Espinoza v. People*, 712 P.2d 476, 478 (Colo.1985). It is error that is "both obvious and substantial," and that "so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *Miller*, 113 P.3d at 750 (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)).

Here, we review the court's ruling regarding the admission of the evidence of Sandoval's prior drug dealing for abuse of discretion. However, we conduct plain error review of Sandoval's contentions that the prosecutor exceeded the scope of the trial court's pretrial ruling and exploited evidence of drug dealing for an improper purpose.

### B. Analysis

All relevant evidence is admissible unless otherwise excluded by constitution, statute, or rule. CRE 402; *People v. Rath*, 44 P.3d 1033, 1038 (Colo.2002). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *see People v. Carlson*, 712 P.2d 1018, 1021–22 (Colo.1986).

Under CRE 404(b), evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show that the person acted in conformity therewith, but such evidence is admissible to show, among other things, proof of motive, opportunity, intent, identity, preparation, plan, or knowledge. Evidence of other, uncharged crimes is admissible only if it is logically relevant for some reason apart from an inference that the defendant acted in conformity with a character trait, and if the probative value of the evidence for that other

reason is not substantially outweighed by the other policy considerations of CRE 403. *Rath,* 44 P.3d at 1038.

■ To be admissible under CRE 404(b), evidence of other crimes, wrongs, or acts must satisfy a four-part test: (1) the proffered evidence must relate to a material fact; (2) it must be logically relevant to the material fact; (3) the logical relevance must be independent of CRE 404(b)'s prohibited inference that the defendant committed the crime charged because he or she acted in conformity with his or her bad character trait; and (4) the evidence's probative value must not be substantially outweighed by the danger of unfair prejudice. *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990).

The People sought to introduce evidence that Sandoval sold drugs out of his home as probative of his motive, intent, and identity as the shooter. The trial court found that evidence of Sandoval's drug dealing was admissible for three limited purposes: (1) to support the testimony of Craine and Lopez, if they testified, that Sandoval offered them drugs if they would dispose of S.H.'s body; (2) to support the testimony of Daniel Gomez, if he testified, that Sandoval had previously offered him drugs if he would kill S.H., thereby showing intent, motive, or absence of mistake; and (3) to support the testimony of Gomez, if he testified, that Sandoval sold him drugs through the mail slot of Sandoval's door on the night of the homicide. At trial, the prosecution presented evidence of only the first scenario, but did not call Gomez as a witness in its case-in-chief.

Sandoval argues that evidence of his drug dealing is not a material fact for purposes of *Spoto,* because a person need not be a drug dealer in order to barter with drugs.

■ Here, the trial court properly admitted evidence of Sandoval's drug dealing pursuant to CRE 404(b) and in accordance with *Spoto*'s four-part analysis. First, the proffered evidence of his drug dealing relates to the material facts of identity, intent, and motive. *See People v. Baker,* 178 P.3d 1225, 1231 (Colo.App.2007) (identity is a material fact for purposes of CRE 404(b) analysis); *see also Spoto,* 795 P.2d at 1318 (intent is

undeniably a material fact for CRE 404(b) analysis); *People v. Adams,* 867 P.2d 54, 57 (Colo.App.1993) (evidence of a defendant's other acts is admissible to prove his or her mental state for the crime charged).

The identity of the victim's killer was disputed at trial, because Sandoval argued that Lopez killed S.H. The trial court found that Sandoval's access to drugs was probative evidence, because "witnesses will be testifying that the defendant offered them drugs to participate in the cover-up." The trial court held that such evidence was probative of "post-homicide behavior" and thus probative of the identity of the killer. Further, the trial court held that whether Sandoval had access to a sufficient quantity of crack cocaine to give to Craine and Lopez if they would dispose of the victim's body was probative of identity.

The People asserted that Sandoval, acting as a drug dealer, was angry when S.H.'s mother returned with a smaller quantity of methamphetamine than what he had purchased. The People offered evidence of Sandoval's drug dealing to show why he argued with S.H. on the night of her death regarding the quantity of methamphetamine. The trial court found that this evidence was probative for purposes of both motive and intent to kill S.H.

■ The second step of *Spoto* is satisfied because evidence of Sandoval's drug dealing is logically relevant to prove the material facts of identity and intent. Logical relevancy tends to make the existence of the material facts more probable or less probable. *People v. Davis,* 218 P.3d 718, 729 (Colo.App. 2008). Here, the trial court found that evidence of Sandoval's drug dealing had probative value, because, among other things, he offered drugs to Craine and Lopez to dispose of S.H.'s body. The trial court stated that it was "sensitive about labeling people as drug dealers for marginal reasons," but reasoned that "whether defendant was in a position to give [Craine and Lopez] a serious amount of drugs or not, it seems ... to be highly probative." We agree that evidence of Sandoval's access to a large quantity of crack cocaine tends to corroborate Craine's and Lopez's testimony that Sandoval had offered

them drugs to dispose of S.H.'s body. In so doing, it tended to prove that Sandoval was the killer.

■ *Spoto*'s third step requires the proffered evidence to be logically relevant independent of CRE 404(b)'s prohibited inference. *Spoto*, 795 P.2d at 1318. Because all evidence of other bad acts could support a propensity inference, *Spoto* "does not demand the absence of the inference," but "merely requires that the proffered evidence be logically relevant independent of that inference." *People v. McBride*, 228 P.3d 216, 227 (Colo.App.2009) (quoting *People v. Snyder*, 874 P.2d 1076, 1080 (Colo.1994)).

The trial court did not abuse its discretion in finding the third *Spoto* prong satisfied. Evidence that Sandoval previously sold crack cocaine to Craine and Lopez tended to prove that he had the ability to give Craine and Lopez a large enough quantity of cocaine to bribe them to become accessories to the murder. This, in turn, tended to prove that Craine and Lopez testified truthfully, and thus, that Sandoval was the killer. Thus, the evidence is logically relevant independent of any inference of Sandoval's character.

We similarly conclude that the trial court did not abuse its discretion in balancing evidence of Sandoval's drug dealing against the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318. Sandoval's prior act was highly probative, as it tended to establish his identity in the present shooting. Such evidence always has a risk of unfair prejudice, but it was within the trial court's discretion to find that this risk did not substantially outweigh the probative value of the evidence.

Accordingly, the trial court did not abuse its discretion when it admitted evidence of Sandoval's prior drug dealing pursuant to CRE 404(b).

■ Sandoval also asserts that in any event, the trial court allowed evidence throughout the trial stating or implying that he sold drugs, and such evidence exceeded the scope of the trial court's limiting instructions. Sandoval did not object to the statements that he sold drugs, and thus, we review for plain error. *Miller*, 113 P.3d at 745. We perceive no obvious or substantial error

affecting the fundamental fairness of the trial or casting doubt on the reliability of the judgment of conviction, particularly because Sandoval himself introduced evidence of drug use to explain the events of the case.

## IV. Impeachment of Gomez

Sandoval contends that the prosecutor improperly impeached Gomez as a witness with prior inconsistent statements but without admitting extrinsic evidence of those statements, thereby denying him a fair trial. Because we conclude that any error was not plain error, we disagree.

### A. Standard of Review

Sandoval concedes that we should review this issue for plain error. Where a defendant fails to object to the admission of evidence at trial, we review for plain error. *Miller*, 113 P.3d at 745. Plain error exists when, "after a review of the entire record, a court can conclude with fair assurance that the error so undermine[s] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Elie*, 148 P.3d 359, 364 (Colo.App.2006).

■ Plain error assumes that the court should have intervened sua sponte because the error was so obvious. *People v. Petschow*, 119 P.3d 495, 505 (Colo.App.2004).

### B. Analysis

"Before a witness may be examined for impeachment by prior inconsistent statement the examiner must call the attention of the witness to the particular time and occasion when, the place where, and the person to whom he made the statement." CRE 613(a). "Where the witness denies or does not remember making the prior statement, extrinsic evidence, such as a deposition, proving the utterance of the prior evidence is admissible." *Id.*

■ The prosecutor must ask impeachment questions in good faith. *People v. Pratt*, 759 P.2d 676, 692 (Colo.1988). Determination of whether good faith exists is within the trial court's discretion. *Id.*

At trial, Gomez testified for the defense that Lopez admitted to him that she had shot and killed S.H. On cross-examination, the prosecutor sought to impeach Gomez by offering prior inconsistent statements. First, the prosecutor asked Gomez, "[Y]ou told the detective there were times [you] were offered money by [Sandoval] to kill [S.H.]. Do you recall that statement?" and Gomez replied, "No." The prosecutor then asked, "Do you remember stating that ... [Sandoval] basically offered [you] quantities of dope to take [S.H.] out? That was six minutes and 19 seconds into your interview. Do you recall making that statement?" and Gomez replied, "No, I don't." Later, the prosecutor asked Gomez if he remembered stating that on Sunday night he purchased drugs from Sandoval through the mail slot of Sandoval's front door, and Gomez replied, "There wasn't even a mail slot there." Despite Gomez's repeated denials of those prior statements, the prosecutor did not offer extrinsic evidence to prove the utterance of the prior statements pursuant to CRE 613(a).

Relying on *People v. Lowe*, 39 Colo.App. 312, 316, 565 P.2d 1352, 1355 (1977), in which a prosecutor insinuated to the jury that a witness made a prior inconsistent statement but failed to offer extrinsic proof, Sandoval asserts that the prosecutor's questioning amounted to plain error. *Lowe* is distinguishable, because the prosecutor there asked the witness if he knew "the penalty for perjury." Thus, the division in *Lowe* reasoned that "[t]he palpable import of the prosecutor's comments was that he believed the witness had committed perjury" and "[s]uch manifestations of personal belief in the credibility of a witness by a prosecutor have been condemned in [Colorado]." *Id.* at 317, 565 P.2d at 1355.

Here, in contrast, the prosecutor's questions implied that Gomez had changed his story, but did not suggest that he had committed perjury. Further, in *Lowe*, unlike in the present case, the prosecutor asked the court for the witness's address and telephone number in the presence of the jury, implying

that he intended to contact the witness to file perjury charges against him.

The People assert, relying on the plain language of CRE 613, that if a witness denies a prior inconsistent statement, then a prosecutor is permitted, but not mandated, to offer extrinsic evidence proving the disputed point. To rebut this assertion, Sandoval relies on out-of-state cases.[1]

If an issue has not yet been decided by a division of this court or the Colorado Supreme Court, then the trial court's error is not obvious, and therefore not plain. *People v. O'Connell*, 134 P.3d 460, 464 (Colo.App. 2005) (citing *United States v. Turman*, 122 F.3d 1167, 1170–71 (9th Cir.1997)). Here, even if the trial court erred in permitting the prosecutor to impeach Gomez with prior inconsistent statements without offering extrinsic proof, its error was not plain, because no Colorado appellate case has addressed this issue. Accordingly, the trial court did not commit plain error when it allowed the prosecutor to impeach Gomez as a witness in the manner in which it did here.

## V. Prosecutorial Misconduct

Sandoval contends that the trial court erred when it overruled his objections to the prosecutor's stating during closing argument that the defense's theory was "garbage" and "trash," and thereby denied Sandoval's right to a fair trial by an impartial jury. Because we conclude that any such error was harmless, we disagree.

### A. Standard of Review

The determination of whether statements during closing arguments constitute inappropriate prosecutorial argument is generally a matter for the exercise of trial court discretion. *People v. Whitman*, 205 P.3d 371, 384 (Colo.App.2007).

When the defendant objects to the prosecution's comments at trial, the trial court's admission of those comments is evaluated under a harmless error standard. *People v. Williams*, 89 P.3d 492, 494 (Colo.App.

1. One of the cases on which Sandoval relies, *United States v. Brown*, 519 F.2d 1368, 1370 (6th Cir.1975), is clearly distinguishable because

there, the prosecutor conceded that there was no basis for the questions asked to challenge evidence in favor of defendant.

2003). Under a harmless error analysis, the error requires reversal if there is a reasonable probability that the defendant could have been prejudiced by the error. *People v. Dunlap*, 975 P.2d 723, 759 (Colo.1999).

## B. Analysis

In a claim of prosecutorial misconduct, the reviewing court engages in a two-step analysis. *Domingo–Gomez v. People*, 125 P.3d 1043, 1048 (Colo.2005). First, it must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review. *Id.* Each step is analytically independent of the other. *Id.* Thus, an appellate court could find a prosecutor's conduct improper, but it could uphold the trial court's verdict because the errors were harmless. *Id.*

Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. *People v. Welsh*, 176 P.3d 781, 788 (Colo.App.2007). A prosecutor must remain within the ethical boundaries during closing argument or risk reversal. *Id.* (citing *Domingo–Gomez*, 125 P.3d at 1048). Prosecutors are granted wide latitude during closing arguments, but a closing argument cannot be used to mislead or unduly influence the jury. *Domingo–Gomez*, 125 P.3d at 1049. A prosecutor should not make arguments that would divert the jury from deciding the case based on the evidence and inferences reasonably flowing from the evidence. *Harris v. People*, 888 P.2d 259, 265 (Colo. 1995). Remarks made to denigrate defense counsel constitute professional misconduct. *People v. Jones*, 832 P.2d 1036, 1038 (Colo. App.1991).

In his closing rebuttal argument, the prosecutor twice referred to the theory of defense as "garbage" and once arguably referred to it as "trash." The trial court overruled Sandoval's objections to these references. To the extent these comments denigrated defense counsel or suggest that counsel did not believe in the defense case, they were improper. However, any error was harmless.

Here, the prosecutor's remarks regarding the defense's theory were isolated statements, and based on the totality of the circumstances, there is no reasonable probability that they contributed to Sandoval's conviction. *See Crider v. People*, 186 P.3d 39, 41–42 (Colo.2008) (prosecutor's use of the words "lie," "lying," and "lied" during rebuttal closing argument to characterize defendant's testimony was harmless error). Accordingly, any error by the trial court was harmless when it overruled Sandoval's objections to the prosecutor's improper remarks during closing argument.

## VI. Delayed Sentencing

Last, Sandoval contends that the trial court erred when it sua sponte delayed imposing a sentence for six months and seven days and thereby violated his right to speedy sentencing under Crim. P. 32(b) and the United States Constitution. As a result, Sandoval maintains, he received a twelve-year sentence instead of a six-year sentence. We agree.

## A. Standard of Review

The parties disagree regarding the correct standard of review. Sandoval asserts that he properly objected to the delayed sentencing, and contends we should review for harmless error. The People argue that a plain error standard of review applies, because Sandoval's objection was based only on the ground that counsel would be unavailable for the new sentencing date.

At trial, Sandoval objected to the delayed sentencing dates on the ground that counsel would be unavailable. Because Sandoval did not object upon the grounds he raises now, we review the trial court's ruling for plain error. *People v. Rogers*, 68 P.3d 486, 491 (Colo.App.2002).

## B. Analysis

### 1. Sentencing Without Unreasonable Delay Under Crim. P. 32(b)(1)

A defendant's sentence "shall be imposed without unreasonable delay." Crim. P. 32(b)(1). The General Assembly has not

established any specific period within which a sentence must be imposed, but absent a "legally justifiable reason ... [a] one year deferral of imposition of sentence ... constitutes an unreasonable delay" in contravention of the rule. *People ex rel. Gallagher v. District Court*, 632 P.2d 1009, 1012 (Colo. 1981).

██ Here, although both Sandoval and the People agreed to proceed with sentencing on August 28, 2006, the trial court delayed sentencing because when Sandoval shot S.H., he was on bond in an unrelated case for the felony of vehicular eluding. The trial court noted that "being on bond when you commit a felony is an aggravating circumstance if the case on which you are on bond results in a conviction." *See* § 18–1.3–401(9)(a), C.R.S. 2010. Sandoval asserts that like the trial court in *Gallagher*, the trial court here unreasonably delayed sentencing to pursue a particular sentencing goal in violation of Crim. P. 32(b). We agree.

Although the delay here was six months and seven days, much less than the one-year delay in *Gallagher*, we conclude that it nevertheless violated the mandate of Crim. P. 32(b)(1).

In *Gallagher*, the supreme court held that delaying sentencing to achieve the appropriate sentencing goal of rehabilitation was nevertheless prohibited under Crim. P. 32(b)(1) because the delay in sentencing imposed by the district court was not legally justifiable.

Here, in contrast, the trial court delayed sentencing in order to have available the option of a longer sentence than was lawfully possible had it proceeded with sentencing on the originally scheduled sentencing date. We conclude that this reason for sentencing delay was not legally justifiable because it contravenes the General Assembly's intent in enacting section 18–1.3–401(9)(a). That provision states that an enhanced sentencing range must be imposed when, among other

reasons, the defendant "was convicted of any felony in the previous case." Thus this statute contemplates that a defendant has already been convicted in a previous case when the enhanced sentence is imposed in the present case.

Accordingly, we conclude that Sandoval was sentenced in violation of Crim. P. 32(b)(1).

We further conclude that this error was plain, because the trial court should have realized that delaying the imposition of sentence for more than six months in order to have available the option of imposing an aggravated range sentence under section 18–1.3–401(9)(a) was impermissible. We further conclude that this error was substantial and undermined the fundamental fairness of the sentencing proceeding itself.

### 2. Constitutional Right to Speedy Sentencing

We also agree with Sandoval's alternative argument that the delay in sentencing here violated his constitutional right to speedy sentencing. We choose to address the constitutional issue because of the paucity of case law interpreting Crim. P. 32(b)(1).

The United States and Colorado Constitutions guarantee an accused the right to a speedy trial. U.S. Const. amend. VI; Colo. Const. art. II, § 16. "Although the United States Supreme Court has not spoken definitively, it is generally accepted in the lower federal courts that a criminal defendant's right to speedy trial under the federal constitution extends through the sentencing phase of a prosecution." *Moody v. Corsentino*, 843 P.2d 1355, 1363 (Colo.1993) (plurality opinion).[2]

██ The Colorado Supreme Court has applied a four-factor "ad hoc balancing test" to determine whether a defendant's right to speedy sentencing was violated. *Id.* at 1363–64 (citing *Barker v. Wingo*, 407 U.S. 514, 530,

---

**2.** In *United States v. Ray*, 578 F.3d 184, 198–99 (2d Cir.2009), the court held that the Speedy Trial Clause of the Six Amendment does not apply to sentencing proceedings, but that a defendant may challenge a delay in imposing sentence under the Due Process Clause of the Fifth Amendment. To establish a due process claim, the defendant must show both prejudice and an unjustified reason for the delay. *Id.* at 199. One judge disagreed that the Speedy Trial Clause does not apply to sentencing proceedings, but agreed with the result reached by his colleagues on the basis that "the difference is essentially one of labels." *Id.* at 190 n.7.

92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). An appellate court will not disturb the factual findings underlying a trial court's constitutional speedy trial determination if the findings are supported by the record. *People v. Glaser,* 250 P.3d 632, 636 (Colo.App.2010). However, a trial court's application of the four *Barker* factors is subject to de novo review. *Id.*

Here, the parties do not dispute the underlying facts of the delay in Sandoval's sentencing, and thus we will not disturb the trial court's factual findings.

■■■ To assess a contention of violation of constitutional speedy sentencing, we apply the ad hoc balancing test employing the following four factors: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Moody,* 843 P.2d at 1363 (citing *Barker,* 407 U.S. at 530, 92 S.Ct. 2182). Although these factors must be considered in combination, the length of the delay must be at least presumptively prejudicial before further inquiry into the other factors is warranted. *Moody,* 843 P.2d at 1363–64. There is no established period that automatically constitutes undue delay, and the length of delay which is presumptively prejudicial varies with the circumstances of each case. *Id.* at 1364.

Sandoval argues that the trial court violated his constitutional right to speedy sentencing, because it derives from his constitutional right to a speedy trial. Following *Moody,* we apply the four-factor *Barker* test to determine whether Sandoval received a speedy sentencing.

■■■ First, we address the *Barker* factors of length of the delay and prejudice to the defendant. Here, Sandoval's sentencing delay of six months and seven days is substantially less than one year, and thus is not presumptively prejudicial. However, because the delay in sentencing enabled the trial court to apply the aggravated sentencing range in section 18–1.3–401(9)(a), and impose a twelve-year sentence, we know that the sentencing delay was actually prejudicial.

Next, we address the *Barker* factor of reasons for the sentencing delay. Other courts have considered a variety of factors in determining whether a sentencing delay violates a defendant's rights. *See Moody,* 843 P.2d at 1364 (delays attributable to a defendant are not to be considered in evaluating a contention of violation of speedy trial rights); *Barela v. People,* 826 P.2d 1249, 1255 (Colo. 1992) (defendant's constitutional right to a speedy trial was not violated where reason for delay in sentencing was to permit the prosecution to obtain interlocutory appellate review of a suppression ruling prior to the attachment of jeopardy); *People v. Jamerson,* 198 Colo. 92, 97, 596 P.2d 764, 768 (1979) (defendant's constitutional right to a speedy trial was not violated where sentencing delay was due to several factors, including defendant and prosecutor seeking continuances); *People v. Smith,* 183 P.3d 726, 730 (Colo.App. 2008) (a six-year delay in sentencing defendant for violation of probation did not violate his constitutional speedy trial right, because reason for the delay was that defendant was incarcerated in another jurisdiction).

Here, the trial court waited to impose a sentence until Sandoval's other case was resolved so that, if he were convicted, it could consider imposing an aggravated range sentence. We conclude that delaying sentencing for approximately six months to potentially impose a greater sentence under section 18–1.3–401(9)(a) was an invalid reason for a speedy sentencing delay. When imposing a sentence, the trial court may consider the seriousness of the crime, the deterrence of crime, and the safety of the community, among other factors. *People v. Fuller,* 791 P.2d 702, 707 (Colo.1990).

However, we conclude that the trial court erred by significantly delaying the imposition of a sentence to increase its sentencing flexibility in the event that Sandoval's pending case would result in an additional felony conviction. Doing so, as discussed above, contravenes the intent of section 18–1.3–401(9)(a), which by its terms applies to a defendant who has already been convicted in a previous case.

Finally, although Sandoval told the trial court that he was ready and desirous of being sentenced on the original sentencing date, he did not object on the basis of a

violation of his constitutional right to speedy trial. Accordingly, this factor militates against Sandoval's claim.

Considering the *Barker* factors together, we conclude that Sandoval's constitutional right to speedy sentencing was violated. Although the period of delay was not as great as in other cases, it resulted in actual prejudice to him; indeed, it resulted in a doubling of his sentence. We have also concluded that the trial court's reason for delaying the imposition of sentence was legally unjustifiable, even if it was intended to increase the court's sentencing flexibility.

Accordingly, we similarly conclude as we did with respect to violation of Sandoval's right to speedy sentencing under Crim. P. 32(b)(1), that the violation of his constitutional right to speedy sentencing constituted plain error. The error was substantial and grave, and seriously affected Sandoval's substantial rights. As a result, the sentence imposed undermined the fundamental fairness of the sentencing proceeding so as to cast serious doubt on its reliability.

We recognize that Sandoval's sentence without the application of the aggravated range based on his subsequent felony conviction may seem short for a crime of this magnitude. Nevertheless, our obligation is to apply the legislation enacted by the General Assembly. *Pringle v. Valdez*, 171 P.3d 624, 627 (Colo.2007). If our conclusion does not comport with the General Assembly's intention, it is the legislature, and not the court, that must rewrite the legislation. *Id.*

The judgment is affirmed, the sentence is vacated, and the case is remanded to the trial court for resentencing consistent with this opinion. On remand, the trial court may sentence Sandoval in the aggravated range, if appropriate, but it may not do so based on Sandoval's subsequent felony conviction.

Judge CARPARELLI concurs.

Judge GABRIEL specially concurs.

Judge GABRIEL specially concurring.

I agree with the majority that Sandoval was sentenced here in violation of Crim. P. 32(b)(1), for the reasons set forth in Part VI(B)(1) of the majority opinion. As a result, I do not believe it is necessary to address, and I would not address, the question of whether the delay in sentencing violated Sandoval's claimed constitutional right to a speedy sentencing. *See Developmental Pathways v. Ritter*, 178 P.3d 524, 535 (Colo. 2008) (noting that the principle of judicial restraint requires courts to avoid reaching constitutional questions that need not be decided); *People v. Lybarger*, 700 P.2d 910, 915 (Colo.1985) ("Axiomatic to the exercise of judicial authority is the principle that a court should not decide a constitutional issue unless and until such issue is actually raised by a party to the controversy and the necessity for such decision is clear and inescapable.").

Accordingly, I respectfully do not join Part VI(B)(2) of the majority opinion. I join the majority opinion in all other respects.