No. 16,291.

Struna et al. *v.* The People.

(215 P. [2d] 905)

Decided February 27, 1950.

Mr. Frank G. Stinemeyer, Mr. Edwin H. Stinemeyer, for plaintiffs in error.

Mr. John W. Metzger, Attorney General, Mr. Raymond B. Danks, Assistant, for the people.

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

■ DEFENDANTS were charged in separate counts of an information with rape and assault to commit rape of prosecutrix, a deaf mute, twenty-one years of age. Each was convicted on the second count, sentenced to the penitentiary, and they here seek reversal of the judgment, relying upon numerous errors alleged to have been committed by the trial court. Most of the errors assigned for reversal, relate to admitting, excluding or in refusing to strike, certain evidence, which are matters resting within the sound discretion of the trial court. We have examined the record in the light of each error assigned and are convinced that the trial court did not abuse its discretion in ruling thereon. Two of the remaining points assigned merit consideration.

It first is contended that the court erred in refusing to permit the defendants' counsel to inspect a written statement alleged to have been made by the prosecutrix at a preliminary hearing before a justice of the peace.

■ During the trial counsel stated to the court that he wished to make a demand in open court upon the District. Attorney for "certain specified public documents." He insisted with much vigor and in a manner which we do not approve, that he had a right to make such demand in the presence of the jury even though the argument on the points involved should be made in chambers out of its presence. In chambers, counsel argued at length concerning his alleged right to use all of such documents in possession of the District Attorney for impeachment purposes, "without the expense of calling witnesses to prove matters that are matters of public record." The public documents to which reference was made, consisted of six pages of ruled tablet paper upon which there appeared in long hand, questions and answers allegedly written during a preliminary hearing before a justice of the peace. The handwriting was not identified, and there is nothing to indicate that the answers were written by prosecutrix except by innuendo or implication. It is conceded that

the sheets of paper do not contain a complete transcript of proceedings before the justice of the peace. The part of the document in which defendants' counsel seem to be particularly interested, is the answer, "I don't think those boys really raped me but they played with me." The sheet of paper upon which the above alleged answer of prosecutrix appears, shows it was tampered with by someone, by the drawing of a red line under said answer so as to unduly emphasize the one answer over all others on the exhibit. In overruling the demand of defendants' counsel for said exhibits, the trial court pointed out that other persons who attended the hearing before the justice of the peace, including the justice himself, were available and could be used as witnesses for impeachment purposes, if necessary. In harmony with the trial court's suggestion, Marjorie Struna, who attended the preliminary hearing, was called as a witness for the defense and testified at the trial that the prosecutrix had so testified in the preliminary hearing. At most, said evidence, if admitted, would have been cumulative in nature, and by reason of the incompleteness and mutilation of the exhibit, the failure to properly identify it as being in the handwriting of prosecutrix or to make proper offer of proof in relation to it, and in view of the further fact that defendants were not convicted of rape, we are convinced that they were not prejudiced, and the trial court was justified in refusing to permit the inspection.

The above subject was fully discussed in *Battalino v. People,* 118 Colo. 587, 199 P. (2d) 897, where we pointed out that the question of the right of counsel for the defense to inspect documents in the possession of the district attorney lies within the discretion of the court, and unless such discretion is abused, its ruling should not be disturbed on review. Here we find no abuse of discretion.

It next is contended that the trial court erred in excluding evidence concerning the unchastity of prose-

cutrix, and her relations with men other than defendants during the evening in question.

In the brief of counsel for defendants it is stated that, "despite the efforts of the District Attorney and trial judge to exclude the same, there is clear evidence that the prosecutrix was in close physical contact with other men * * *." The above statement was evidentally based upon the testimony of the prosecutrix that she had danced during the evening with two men, other than defendants, one of whom started to kiss her. Concerning this episode, the Attorney General states in his brief: "Under this subheading in their argument, the defense fails to show one iota of evidence appearing in the record, or one succinct offer of proof designed to establish that the prosecutrix at any time left the dance floor with any man until she left with these defendants. We submit that no such evidence existed, since neither of defendants nor any of their male friends, who attended the dance, suggested that any one had opportunity to be intimate with the prosecutrix prior to the time she left with defendants. Had there been offer of proof to explain the corroborating evidence introduced by the People, and had the trial court refused such offer, then the argument of the defense might be tenable. The argument, however, stands upon a false premise. The defense neither offered, nor, we submit, could offer any evidence to rebut the damaging corroborating proof introduced by the People in this case."

Our examination of the testimony convinces us that the Attorney General in making the above statement is fully supported by the record. It is not contended by defendants that they had any real or direct evidence tending to prove that prosecutrix, during the evening in question, ever left the dance floor or otherwise had any reasonable opportunity to become intimate with any man prior to the time she left the dance with defendants. In their reply brief defendants' counsel state

that such evidence was "designed to show the possibility" of illegal relations with other men.

During the cross-examination of prosecutrix, she was asked a series of questions of which the following are a fair example: "Were you engaged to be married shortly after November 24, 1948?"; "Have you at any time since November 24, 1948, been engaged?"; "Did not you and Crespin Rocha tell Marjorie Struna * * * that you were engaged and intended to be married this June?"; "At that time, and when the Deputy District Attorney was investigating this matter, didn't you tell him that some one had bothered you sexually when you were eleven years' old?"; "Did Crespin stay in your apartment * * * at Colorado Springs?"; "Didn't you have another boy friend besides Crespin Rocha who gave you a locket for Christmas?"; "Do you have any boys in Antonito that you go with to dances, or did you have any there before November 24, 1948?".

When objection to this line of testimony was made by the District Attorney, counsel for defendants stated that such testimony was offered "for the purpose of laying a foundation for showing the opportunity for any sexual relation on the part of the complaining witness, and also for showing matters as to the character of the complaining witness for morality and for having previous sexual experience. * * * "

Notwithstanding the above questions were, as stated, asked for the purpose of laying foundation for showing prosecutrix' previous sexual experience, no such showing was thereafter made, and we find only one interrogatory by defendants' counsel actually directed to such question, to wit: "Had any other boy or man put their private parts in you before November 24, 1948?" Objection was made by the District Attorney to the above question, and thereupon counsel for defendants stated: "The purpose of the question is only for the purpose of impeaching the witness as to credibility. And, before we can impeach the witness, she has to

answer yes or no to such a question. It isn't offered for the purpose of a defense of consent because, as I stated at the outset of this trial, the defense is absolute innocence."

In changing their position, counsel apparently relied upon the rule found in 44 American Jurisprudence, page 958, from which we quote: "Where the defense is not based upon any theory of consent to the act, but upon a denial by the defendant that he had ever had any carnal intercourse whatever with the female [which is the situation here], testimony as to her unchastity is wholly immaterial and inadmissible, except perhaps, as bearing on the credibility of the prosecutrix."

The trial court, in sustaining objections to the above-mentioned testimony, did not disagree with the above rule, but did question the propriety of the method employed in attacking the credibility of the prosecutrix, as shown by the following excerpts from his rulings: "I hate to be sustaining these objections. There is a limit beyond which you cannot go. If you have evidence of this witness's character, it must be more or less direct. * * * The only thing that can be gotten out of this line of questioning is that that would be remote inference. And these questions are all subject to different interpretations, one may think of it one way, and another another. Nothing direct about them, nothing material. This line of questioning, objection to this line of questioning must be sustained."

It is clearly indicated by the court's rulings that if the defendants had any direct evidence of previous acts of unchastity of prosecutrix with other men than the accused, such evidence in all probability would have been admitted for impeachment purposes. The above evidence was not followed up, nor was any proper offer of proof submitted. Counsel for defendants obviously was satisfied, in absence of direct proof, to rely upon the inferences which they hoped might arise from the

mere asking in the presence of the jury, of questions of the prosecutrix on cross-examination.

A similar question was held by us to be objectionable in *Olguin v. People,* 115 Colo. 147, 170 P. (2d) 285, concerning which we said:

"It thus appears that evidence of former sexual experiences was wholly immaterial unless that experience had been *recent.* Counsel's question—*'Had you ever had any sexual experience prior to this time?'*—was so broad as to cover possible experiences entirely irrelevant, hence the ruling on this point was correct. * * *

"Moreover, under certain general rules amply supported by reason and authority, this assignment is not good. It is admitted that in prosecutions for statutory rape prior intercourse with others and bad reputation for chastity are generally immaterial. 44 Am. Jur., p. 959, §91. The question propounded was so general that the answer, affirmative or negative, could well be improper and irrelevant. Such interrogatories must be specific and disclose their relevancy. 1 Thompson on Trials, page 554, §683; *Morgan v. United States,* 169 Fed. 242, 250, 94 C. C. A. 518. No offer of any kind was made. When a question propounded on cross-examination does not show the relevancy of the testimony sought to be elicited, and there was no offer, its exclusion is justified. *Sealy v. Central Vt. Ry. Co.,* 88 Vt. 178, 92 Atl. 28." (Emphasis supplied)

We find no reversible error in the record; accordingly, the judgment of the trial court is affirmed.