No. 20,160.

ERNEST ATENCIO, ET AL., *v.* RUBEN TORRES.
(385 P. [2d] 659)

Decided November 26, 1963.

Messrs. Sheldon & Nordmark, Mr. Richard H. Glasman, for plaintiffs in error.

Mr. Donald W. Marshall, Mr. Blaise J. Jacobucci, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

One Torres made claim against Atencio and the latter's employer, D M H Cattle Company — a co-partnership consisting of Harold Blitt, Dave Averch and Meyer Averch, for damages allegedly sustained by him as the result of Atencio's negligent operation of his employer's truck. A jury returned a verdict in favor of Torres against all defendants in the amount of $24,423.45, and judgment was duly entered thereon.

By writ of error the defendants seek reversal of the judgment and as grounds therefor urge that the trial court erred:

1. In denying defendants' motion to dismiss interposed at the close of plaintiff's presentation of evidence and renewed after all the evidence had been presented;

2. In refusing to accept three instructions tendered by the defendants;

3. In sustaining Torres' objection when defendants sought to elicit from a state highway patrolman his estimate of the speed of the Torres driven vehicle; and

4. In refusing to grant a new trial because of the allegedly excessive verdict.

This litigation originates in a collision between a 1951 Oldsmobile owned and being operated at the time of the accident by Torres and a two-ton G.M.C. truck owned by D M H Cattle Company and being then driven by its

employee Atencio. It was admitted that at the time and place of the accident Atencio was within the course and scope of his employment with D M H Cattle Company.

The accident occurred at about 3 o'clock P.M. on January 24, 1957, at the intersection of U. S. Highway 85 and Henderson Road. At this intersection U. S. Highway 85 runs in a generally north-south direction and is. intersected at right angles by Henderson Road, which runs in an east-west direction.

U. S. Highway 85 is a divided arterial highway, with an island area approximately 30 feet in width separating the roadway reserved for northbound traffic and that designated to carry southbound traffic. These north and southbound roadways are black top and designed to carry two lanes of traffic, each being about 24 feet in width, exclusive of the shoulder area. The speed limit on U. S. Highway 85 as of the date of the accident was 60 miles per hour.

Henderson Road is a county road and its intersection with U. S. Highway 85 is controlled by stop signs, i.e. traffic on Henderson Road (but not on U. S. Highway 85) must stop before proceeding into the intersection.

Just prior to the collision Torres was proceeding in a southerly direction on U. S. Highway 85 in the west lane of the southbound traffic.

Atencio, driving his employers' two-ton truck, was approaching the intersection from the east and thus proceeding in a westerly direction.

The only eyewitnesses were the two participants. Torres testified that when he was about 200 feet north of the intersection he first noticed the Atencio driven truck. At that moment he (Torres) was traveling about 55 miles per hour and the G.M.C. two-ton truck, traveling about 15 miles per hour, was some 20 feet east of the stop sign. According to Torres, Atencio failed to stop at the stop sign, whereupon Torres "tapped" his brakes and slowed to 40-45 miles per hour, at all times closely

watching the truck. Torres stated that Atencio was "going slow enough to be able to stop" and "I figured he was going to stop down . . . at the intersection right there, and that lane there between the highways . . . I thought he was going to stop in between them two lanes right there."

Continuing to watch the Atencio-driven two-ton truck, Torres stated Atencio did not stop in the island area, but proceeded on across in front of the southbound traffic on the highway. Once having determined that Atencio was not stopping in the "island area," Torres stated that he immediately applied his brakes and attempted to cut to his right in an effort to avoid the accident. Torres concluded by stating that "I didn't have enough room to turn . . . [and] my left front fender . . . struck his front axle on the right side of the truck."

Atencio stated that he did stop at the stop sign before entering this intersection, and looking to the north saw the Torres-driven vehicle about one-half mile away. When he came to the island area, Atencio said he again stopped, but on this occasion he did not look again to the north because, as he himself testified, "I assumed that I had plenty of time to get across." Atencio also stated that after his "second stop" he momentarily killed the engine and had to start the motor again. Proceeding then into that portion of the intersection which carried southbound traffic on U. S. Highway 85, Atencio conceded that he did not see Torres' car until the very moment of impact.

It is first urged that the trial court erred in denying defendants' motion to dismiss, which motion was initially interposed when Torres concluded his presentation of evidence and again renewed after all the evidence had been received. In this regard it is urged that Torres "by his own testimony convicted himself of negligence which . . . was a proximate cause of the accident."

In declining to hold that Torres was guilty of contribu-

tory negligence, *as a matter of law,* the trial court opined as follows:

"It [U.S. Highway 85] is a four lane highway, it is a through highway. The speed limit at the present time is 70 miles an hour. If a person driving on that highway has got to wait because he sees somebody driving into that highway and doesn't know whether they are going to stop or not, then you might just as well make the speed limit 25 miles per hour . . . I think it is a question for the jury."

In *Lasnetske v. Parres,* 148 Colo. 71, 365 P. (2d) 250, it was said: "It is well settled in this state that the issues of negligence, contributory negligence and proximate cause are matters generally to be resolved by the trier of the facts, and it is only in the clearest of cases, where the facts are undisputed and reasonable minds can draw but one inference from them, that the question of what constitutes reasonable care is ever one of law to be decided by the Court . . . "

■ Careful application of this general rule to the facts and circumstances of the instant case convinces us that the trial court was eminently correct in its determination that the issue as to whether Torres was guilty of contributory negligence was a controverted matter properly to be resolved by the jury, and not the court.

■ Torres testified that even though he saw the Atencio-driven truck slowly go through the stop sign and proceed across the path of northbound traffic on U. S. Highway 85 (there apparently was no northbound traffic at the moment), he nevertheless still thought that Atencio would thereafter stop his vehicle in the island area separating the northbound and southbound lanes of travel on U. S. Highway 85. This island area was some 30 feet in width and there was no obstruction of any kind to prevent Atencio from seeing the Torres vehicle. Under all of these circumstances, was Torres' "thought" that Atencio would stop his vehicle in the island area reasonable or unreasonable? We hold that this matter

was a matter properly within the province of the finder of the facts.

The defendants urge that *Bennett v. Hall,* 132 Colo. 419, 290 P. (2d) 241, is on "all fours" with the instant case and that under the rationale and holding of the *Bennett* case Atencio is guilty of contributory negligence as a matter of law. Although there are similarities between the facts of the instant case and those disclosed by the *Bennett* opinion, there are also significant dissimilarities. The trial court itself touched upon one such dissimilarity: here we are concerned with a plaintiff traveling upon a divided super speed highway with the roadways for north and soundbound traffic being separated by a 30-foot island area, and with a stop sign confronting all who would cross the highway. In the *Bennett* case the plaintiff was proceeding on State Highway No. 17, a road only 20 feet wide. *Kendall Transportation Company v. Jungck,* 136 Colo. 339, 316 P. (2d) 1052, illustrates that *Bennett v. Hall,* supra, will not be "extended to apply to actions in which the facts are at variance with the particular circumstances shown to be present in that case." Suffice it to observe the *Bennett* case is not decisive of the instant controversy.

Defendants' suggestion that the trial court erred in refusing to give their three proffered instructions is deemed to be without merit. In our view the jury was adequately instructed on defendants' theory of the case even though the trial court in its several instructions declined to use the particular verbiage desired by the defendants.

Defendants next urge that the trial court erred in sustaining an objection to a question propounded to a state highway patrolman calculated to elicit an opinion from said witness as to the speed of the Torres-driven vehicle. The precise question posed was: "From your experience . . . in the investigation of accidents, and from your finding of physical facts on the ground, the condition of these vehicles, the size and weight of the

vehicles, *and so on,* were you able to form an opinion as to the speed of the Torres vehicle as it was coming into the intersection?" (Emphasis supplied.) The trial court sustained an objection to the foregoing question for the announced reason that there was insufficient qualification of the patrolman as an expert. The matter was then dropped, with no further effort to qualify the witness as an expert. In this state of the record error cannot now be successfully predicated.

█ In their brief defendants declare that "the law in this jurisdiction is firmly established that a highway patrolman is qualified to estimate speed from the physical facts at the scene of the accident," apparently relying on *McNelley v. Smith,* 149 Colo. 177, 368 P. (2d) 555, and *Ferguson v. Hurford,* 132 Colo. 507, 290 P. (2d) 229. In this regard a more accurate statement would be that a highway patrolman *may be* qualified "to estimate speed from the physical facts at the scene of an accident." In other words, just because a witness happens to be a state highway patrolman does not *ipso facto* entitle him to express an opinion as to speed. Before he may so do it must be shown, *prima facie,* that because of his experience, education, training and knowledge of the facts, his opinion as to speed would be something more than a mere layman's guess.

█ The general rule is that the sufficiency of the evidence to establish the qualification and knowledge of a witness to entitle him to express an opinion poses a question for the trial court's determination, and that its "decision is conclusive, unless clearly shown to be erroneous." See, for example, *City of Boulder v. Burns,* 135 Colo. 561, 313 P. (2d) 712. Suffice it to say that in the instant case the trial court's determination of insufficiency has not been "clearly shown to be erroneous." Indeed, its sustaining of the objection did not even preclude additional efforts to meet the defects perceived by the court. But no such additional attempt was ever made.

514

▮ The final assignment pertains to the alleged excessiveness of the verdict. The verdict of the jury was in the amount of $24,423.45 and under the circumstances we conclude it was not excessive.

Torres at the time of trial had a life expectancy of 42 years and the principal injury received by him in the accident was to his right leg. His right kneecap was shattered and eventually had to be removed. He was hospitalized for some 47 days, and incurred hospital and doctor bills in excess of $1200. Prior to the accident Torres' principal employment was that of cement finisher and he testified that because of his injury to his knee he could no longer perform this type of work. His testimony in this regard was corroborated by an orthopedic surgeon.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.